UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVSIION

| DAVID JOHN HUMINSKI, | ) | CASE NO. 5:16-cv-3000 |
|---|---|---|
| Plaintiff, | ) | JUDGE SARA LIOI |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF | ) | THOMAS M. PARKER |
| SOCIAL SECURITY, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendant. | ) | |

## I. Introduction

Plaintiff, David John Huminski, seeks judicial review of the final decision of the Commissioner of Social Security denying his application for supplemental security income under Title XVI of the Social Security Act ("Act"). This matter is before the court pursuant to 42 U.S.C. §405(g), 42 U.S.C. §1383(c)(3) and Local Rule 72.2(b).

Because the ALJ did not correctly apply the applicable legal standards, I recommend that the court should VACATE and REMAND the final decision of the Commissioner for further proceedings.

## II. Procedural History

On February 18, 2014, Huminski filed applications for disability insurance benefits and supplemental security income alleging disability beginning January 28, 2014. (Tr. 94) The claim was denied initially on April 23, 2014. (Tr. 94-124) Huminski requested a hearing on May 8, 2014. (Tr. 127) Administrative Law Judge ("ALJ") Susan Smoot heard the case on January 27, 2016. (Tr. 36-87) The ALJ found Huminski not disabled in a February 23, 2016 decision. (Tr.

1

16-30) The Appeals Council denied Huminski's request for review, rendering the ALJ's decision final. (Tr. 1-4) Huminski instituted this action to challenge the Commissioner's final decision.

**III.   Evidence**

    **A.   Personal, Educational and Vocational Evidence**

Huminski was born on August 31, 1959 and was 56 years old at the time of the hearing. (Tr. 41) He lived alone in a small, one-story house. (Tr. 42) Huminski completed high school and had past work experience as a driver and a dispatcher. (Tr. 83)

    **B.   Relevant Medical Evidence** [1]

Between November 10, 2014 and February 2015, Huminski sought chiropractic treatment from Dr. Geoff Besso and Dr. Lynn Olszewski. (Tr. 452-456, 468-469, 461-471) Huminski complained of left leg, low back and knee pain; sharp and stabbing pain when rising from a seated position; and periodic flare-ups of trigeminal neuralgia. At initial appointments, Huminski described his pain as constant and moderate but he reduced this rating to mild at later appointments. (Tr. 464, 457) Observations from physical examinations included a shorter left leg, high left shoulder, high right pelvis, right neck tilt, grade one to two hypertonicity in the right and left cervical spine, grade two muscle spasm with left superior medial and medial scapular palpation, and grade one to two hypertonicity in the right and left lumbar spine. (Tr. 456-465, 468-469) Drs. Besso and Olszewski noted that Huminski was improving. (Tr. 452-453) Huminski continued to complain of left leg, low back and knee pain but he described it as

---

[1] Huminski only raises issues related to his physical impairments. No recitation of the medical records concerning his mental impairments is necessary because any issue relating to the same has been abandoned in this appeal.

mild; he reported less sharp pain when he changed from a seated to standing position. (Tr. 452-456)

On February 26, 2015, Huminski was evaluated for physical therapy. He reported pain in his left anterior hip and thigh with some numbness. (Tr. 560-562) The physical therapist, Chris Miloscia, observed pain with resisted hip flexion on the left and a mild decrease in internal rotation and flexion, both of which produced left groin pain. (Tr. 561) The therapist recommended that plaintiff attend rehabilitative therapy for four weeks, two times per week. (Tr. 562) The discharge summary for physical therapy dated April 22, 2015 stated that Huminski had done very well after his last visit but did not return for his final visit. (Tr. 549-550)

At an appointment with nurse practitioner, Maureen Vantine, on March 13, 2015, Huminski complained of worsening lower back pain with radiation down his left leg to his knee, aggravation of his pain when changing positions, numbness and tingling in the left leg, weakness in his left leg and problems sleeping. (Tr. 555-558) Nurse Vantine noted that recent imaging from the chiropractor's office showed degenerative disc disease of the lumbar spine and bone spurs in the cervical spine. (Tr. 555) Nurse Vantine observed tenderness of the lumbar spine and left paraspinal muscles and obesity, but Huminski had normal strength bilaterally and negative straight leg raise test. (Tr. 556) Finally, Nurse Vantine made assessments of: degeneration of lumbar or lumbosacral intervertebral discs, dietary surveillance and counseling, exercise counseling, and obesity. (Tr. 556)

Huminski saw a family physician, Ramandeep Dhillon-Gill, D.O., on June 25, 2015. (Tr. 543-545) Huminski reported weakness and pain in his left leg. He told Dr. Dhillon-Gill that he had a laminectomy in 1995 and that physical therapy had been ineffective. (Tr. 543) During examination, Dr. Dhillon-Gill observed that Huminski had weakness in his left leg and was

3

unable to walk on his left toe. (Tr. 543) Dr. Dhillon-Gill diagnosed degeneration of lumbar or lumbosacral intervertebral discs, tobacco dependence, sciatica and chronic obstructive pulmonary disease. This physician prescribed Cyclobenzaprine, a muscle relaxant, and referred Huminski for spirometry and to an orthopedic surgeon. (Tr. 544)

At a follow-up appointment on July 21, 2015, Huminski reported that he was taking Flexeril only when he was in severe pain. The past week he had taken it twice. Dr. Dhillon-Gill noted that spirometry indicated normal lung function. (Tr. 541-542) Later that month, Huminski saw another physician in the same practice, Vikil Girdhar, M.D. and reported back pain radiating down his left leg. (Tr. 537-540) Dr. Girdhar's examination findings were normal with the exception of mild left paraspinal tenderness and diminished range of motion in back. Dr. Girdhar also noted Huminski needed to change positions for comfort. (Tr. 537-538) Dr. Girdhar diagnosed an upper respiratory infection, tobacco dependence, back pain, and other malaise and fatigue. (Tr. 538) In two subsequent appointments with Dr. Girdhar that Fall, Huminski did not complain of any musculoskeletal pain. (Tr. 524-525, 535-536) He did complain of left hip pain at an appointment on November 16, 2015. (Tr. 563-564)

On August 13, 2015, Huminski attended an initial appointment with Dr. Carrie A. Diulus, an orthopedic surgeon. (Tr. 497-514) Huminski reported intermittent leg pain, with a sharp stabbing pain from his groin to anterior knee; aggravation of his symptoms with driving, sitting, changing positions, and lifting; numbness in the entire left leg; low back pain, status post-surgery; limitations in his ability to walk/stand; weakness in his legs; trouble urinating; and mood changes. (Tr. 506-507) Physical examination showed limited range of motion in Huminski's lumbar spine and left hip, but no difficulty with ambulation, full range of motion in the cervical spine, full motor strength, normal sensation, negative straight leg raise tests, and no

4

difficult with coordination. (Tr. 508-509) X-rays of the lumbar spine showed bilateral hip arthritis, loss of disc space height bilaterally at two levels, mild facet arthritis, and no instability. (Tr. 515) Dr. Diulus assessed Huminski's left hip pain as severe and discussed surgical and nonsurgical options with him. (Tr. 510) She noted that Huminski was morbidly obese and would need to lower his body mass index to be a hip replacement surgery candidate. (Tr. 510)

In early September 2015, Huminski returned to Dr. Diulus for a left hip arthrogram, aspiration, and steroid injection. (Tr. 485-486) Fluoroscopic imaging of the left hip during this procedure demonstrated a small amount of contrast within the joint and degenerative changes of the hip.

Two weeks after his injection, on September 17, 2015, Huminski completed a questionnaire for the Spine Wellness Center. (Tr. 475-476) He indicated that he had 70% improvement after the injection. (Tr. 475) He marked circles indicating that: the pain comes and goes and is very severe; he had pain in bed but it did not prevent him from sleeping well; pain prevented him from sitting more than ½ hour; he could stand without pain; he had some pain while walking but it didn't increase with distance; he did not normally change his way of washing or dressing even though it caused some pain; he could lift heavy weights without extra pain; he got extra pain while traveling but it did not cause him to seek alternate forms of travel; pain had no significant effect on his social life apart from limiting more energetic interests (e.g. dancing); and that his pain was rapidly getting better. (Tr. 476)

On September 17, 2015, Dr. Diulus observed that Huminski was ambulating without difficulty and that he was "doing great" with regard to his hip. She noted that he could have another injection in three months. Huminski complained of left leg pain with occasional stabbing pain along the anterior medial aspect of his thigh. (Tr. 480) Dr. Diulus assessed

5

trigeminal neuralgia; lumbosacral spondylosis without myelopathy; tobacco use disorder; morbid obesity; and osteoarthritis localized primary involving pelvic region and thigh. She discussed with him that he may ultimately need a hip replacement. (Tr. 482) On January 5, 2016 Huminski underwent a second left hip arthrogram with aspiration and fluoroscopically-guided injection performed by Dr. Diulus. (Tr. 630-632)

### C. Testimonial Evidence

#### 1. Huminski's Testimony

- Huminski was born on August 31, 1959. He is 5'11" and weighed 290 pounds. (Tr. 41)

- Huminski lived alone. (Tr. 42)

- He had a driver's license and was able to drive. (Tr. 42) He didn't drive long distances though; he felt he would be able to drive 45 minutes before stopping. (Tr. 43)

- Huminski completed high school and one year of college. (Tr. 43) He also went to truck driving school and was licensed as a trucker in 1995. He worked on and off as a truck driver for ten years. (Tr. 44)

- Huminski worked in numerous jobs involving driving and delivering. He worked as a truck driver requiring him to lift up to 120 pounds. (Tr. 47) He worked as a delivery driver for various companies. (Tr. 48-49, 52) When delivering to liquor stores, he was required to lift about 50 pounds repetitively. (Tr. 49) He also drove a concrete mixer for a few years. (Tr. 50)

- Huminski also worked as a dispatcher for a company that transported people to doctor's appointments (Tr. 53-54) and as a press operator through a temp agency. (Tr. 56-60)

- Huminski felt that he could no longer work due to pain in his hip, back, and knee and manic depression. (Tr. 60)

- Huminski's back pain began in 1994. He had a laminectomy at L3-4 and L4-5 in 2004. After that he was able to work full time for many years. (Tr. 62)

- His back pain became unbearable toward the end of 2015. (Tr. 62) His lower back pain was associated with pain in his left hip. (Tr. 64) He received injections to help

with pain and took medications. (Tr. 65) His pain worsened when he went from a sitting to a standing position. (Tr. 65) Huminski thought that he would eventually undergo hip surgery. (Tr. 67)

- Huminski took Seroquel and was able to sleep eight hours most nights. Sometimes he woke up with pain and could not go back to sleep. (Tr. 66)

- Huminski also suffered from trigeminal neuralgia that caused severe pain in his head. He took medication to prevent attacks.

- Huminski was a recovering alcoholic. (Tr. 72-74)

- January 28, 2014 was the onset date stated on Huminski's disability application. He chose that date because it was the fourth time he went to a psychiatric hospital and when he thought that he was no longer able to work. He also had physical back problems and suffered from trigeminal neuralgia attacks. (Tr. 74)

- Regarding his mental symptoms, Huminski testified that he was unable to understand simple ideas, had poor concentration, fear, anxiety and frustration. (Tr. 75)

- On a typical day, Huminski set his alarm for 7:30 a.m., but he sometimes hit the snooze button for a couple of hours. He attended two AA meetings – one in the morning and one in the afternoon. Some days he visited his 91 year old father. (Tr. 79)

- Huminski was able to go grocery shopping. Sometimes he took breaks before putting the groceries away. He lived in a small two-bedroom house and was able to sweep and do laundry. (Tr. 80-81)

### 2. Vocational Expert – Alina Curtanick

Alina Curtanick, a vocational expert ("VE"), also testified. (Tr. 82-86)

- She considered Huminski's past work to be a driver, which he performed at a heavy exertional level, and a dispatcher, which he performed at a light exertion level. Huminski did not have any transferable skills from these jobs. (Tr. 83)

- She was asked to consider a hypothetical individual of Huminski's age, education, and past work experience who could perform a full range of work at a medium exertion level, but was limited to simple, routine, and repetitive tasks. (Tr. 83)

- Ms. Curtanick testified that this individual would not be able to perform Huminski's past jobs. (Tr. 83) But this individual could work as a laundry worker, a hand packager and a hospital food service worker. All of these positions existed in significant numbers in the national economy. (Tr. 84)

- When the hypothetical individual was limited to light work with frequent climbing ramps and stairs, ladders, ropes and scaffolds, frequent stooping, crawling and crouching and he could perform simple, routine and repetitive tasks, he would no longer be able to perform those jobs. (Tr. 84) However, this individual would be able to perform the position of sorter, electronic worker, and mail clerk. All of these positions existed in significant numbers in the national economy. (Tr. 85)

- If the hypothetical individual took more than one unexcused absence per month, he would not be competitively employable. (Tr. 85) Also, most employers would not tolerate an individual being off task more than 15% of the time. (Tr. 86)

**IV. Standard for Disability**

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[2]....

42 U.S.C. § 423(d)(2)(A).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

---

[2] "[W]ork which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423 (d)(2)(A).

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.R.F. §§ 404.1520, 416.920; *Bowen v. Yuckert,* 482 U.S. 137, 140-142 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.* 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to produce evidence that establishes whether the claimant has the RFC and vocational factors to perform work available in the national economy. *Id.*

## V.     The ALJ's Decision

The ALJ's February 26, 2016 decision stated:

1. Huminski met the insured status requirements of the Social Security Act through September 30, 2016. (Tr. 21)

2. Huminski had not engaged in substantial gainful activity since January 28, 2014, the alleged onset date. (Tr. 21)

3. Huminski had the following severe impairments: obesity, depression and bipolar disorder. (Tr. 21)

4. Huminski did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 23)

5. Huminski had the residual functional capacity to perform medium work except that he was limited to simple, routine, repetitive tasks. (Tr. 25)

6. Huminski was unable to perform past relevant work. (Tr. 28)

9

7. Huminski was born on August 31, 1959. On the alleged disability onset date, he was 54 years old. (Tr. 28)

8. Huminski had at least a high school education and was able to communicate in English. (Tr. 28)

9. Transferability of job skills was not material because Huminski was not disabled. (Tr. 28)

10. Considering Huminski's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. (Tr. 29)

The ALJ determined that Mr. Huminski had not been under a disability since January 28, 2014. (Tr. 29)

## VI. Law & Analysis

### A. Standard of Review

This court's review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.,* 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker,* 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

The Act provides that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g) and 1383(c)(3).

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. *Buxton v. Halter,* 246 F.3d 762, 772-3 (6th Cir. 2001) (*citing Mullen v. Bowen,* 800 F.2d 535,545 (6th Cir. 1986); *see also Her v. Comm'r of Soc. Sec.,* 203 F.3d 288, 389-90 (6th Cir. 1999) ("Even if the evidence could also support another conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached." *See Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997). This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference. *Mullen,* 800 F.2d at 545 (*citing Baker v. Heckler,* 730 F.2d 1147, 1150 (8th Cir. 1984).

The court must also determine whether proper legal standards were applied. If not, reversal is required unless the legal error is harmless. *See e.g. White v. Comm'r of Soc. Sec.* 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.")

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue,* 774 F.Supp.2d 875, 877 (N.D. Ohio 2011) (*quoting Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir. 1996); *accord Shrader v. Astrue,* No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue,* No. 1:10-cv-734, 2011 U.S. Dist. LEXIS 141342 (S.D. Ohio Nov. 15, 2011); *Gilliams v. Astrue,* No. 2:10-CV-017, 2010 U.S. Dist.

LEXIS 72346 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, No. 1:09-cv-19822010, 2010 U.S. Dist. LEXIS 75321 (N.D. Ohio July 9, 2010).

### B. Step Two Severity Finding

Huminski argues that the ALJ erred in finding that his degenerative changes of the lumbar spine, status post-surgery, and degenerative changes of the left hip were not severe impairments at step two. At step two, a claimant must show that he or she suffers from a severe medically determinable physical or mental impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment is considered non-severe when it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). The Regulations define basic work activities as being the "abilities and aptitudes necessary to do most jobs," which include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1521(b) and 416.921(b).

The regulations provide that if the claimant's degree of limitation is none or mild, the Commissioner will generally conclude the impairment is not severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work

activities." 20 C.F.R. §§ 404.1520a(d), 416.920a(d). The purpose of the second step of the sequential analysis is to enable the Commissioner to screen out "totally groundless claims." *Farris v. Sec'y of HHS*, 773 F.2d 85, 89 (6th Cir.1985). The Sixth Circuit has construed the step two severity regulation as a "de minimis hurdle" in the disability determination process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988). Under a Social Security policy ruling, if an impairment has "more than a minimal effect" on the claimant's ability to do basic work activities, the ALJ is required to treat it as "severe." SSR 96-3p, 1996 SSR LEXIS 10 (July 2, 1996).

The ALJ discussed Huminski's history of back surgery and his left hip arthritis at step two of her decision:

> Relevant to the claimant's history of back surgery, the record does reflect a history of remote back surgery. (2F/6) Within the present record, the claimant has treated with medications, but only "as needed" basis. (8F/16) He treated with a brief course of physical therapy, at which he did "very well," but stopped before his last appointment. (8F/27) He has treated with a brief course of chiropractic therapy, which, again, records consistent improvement. (6F) On balance, the record indicates that this condition is recurrent, but not chronic, will not impose more than minimal limitations on the claimant's ability to engage in basic work activity and is therefore non-severe.
>
> * * *
>
> Relevant to the claimant's alleged left hip arthritis, this condition has so far been diagnosed as osteoarthrosis (7F/11) and left hip pain (9F/1). The claimant has treated for this condition with a series of aspiration/injection procedures (12F), (7F/9), which has worked 100% improvement. (7F/9) The claimant has also treated with a course of physical therapy, at which he did "very well" but stopped before his final appointment (8F/27). On balance, the record to date indicates that although recurrent, this condition is not chronic, will not impose more than minimal limitations on the claimant's ability to engage in basic work activity and is therefore non-severe.

(Tr. 22)

The ALJ pointed to evidence in the record to support her conclusion that plaintiff's back and hip impairments were not severe. However, there were several records post-dating the ALJ-

13

cited records which showed he was still suffering from back and hip pain associated with his impairments. On several visits to his family physician, Huminski complained of back and hip pain radiating into his leg. (Tr. 537-538, 543, 555) X-rays showed degenerative changes in Huminski's lumbar spine. (Tr. 555) In June 2015, Huminski's doctor observed that he had weakness and trouble walking on his left leg. (Tr. 543) In July 2015, the doctor observed that Huminski was "having to change positions for comfort." (Tr. 538) Then, Huminski was referred to an orthopedic surgeon to determine if surgery was an option. (Tr. 497-512) At his initial assessment, Huminski complained that he was having a stabbing pain when rising from a seated position, that he was limited with how long he could walk/stand, and that he was unsteady walking. (Tr. 506) At an appointment in September 2015, three months before his administrative hearing, Dr. Diulus noted that Huminski was doing great, but she also told him that he was ultimately going to need hip surgery. (Tr. 482) Given these records and the Huminski's testimony, the ALJ erred in determining that he failed to meet the *de minimis* burden of proving that his lower back and hip impairments were severe. Medical records showed that these impairments were having more than a minimal impact on his ability to work and that they had not fully resolved.

Even though the ALJ erred in finding that these impairments were non-severe, the court must analyze whether the error was harmless. Once an ALJ determines that one or more of the claimant's impairments are severe, she must consider all the claimant's severe and non-severe impairments in the remaining steps of the sequential analysis. As argued by the Commissioner, the finding that Huminski's back and hip pain were non-severe impairments at step two would be legally irrelevant if the ALJ considered them in the remaining steps of the sequential analysis. *See Anthony v. Astrue,* 266 Fed. Appx. 451, 457 (6th Cir. Ohio 2008), citing *Mariarz v. Sec'y of*

*Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) (holding that the failure to find that an impairment was severe was harmless error where other impairments were deemed severe). In cases such as this, courts look to see whether the ALJ actually considered impairments deemed non-severe at later steps in the sequential analysis. *See Simpson v. Comm'r of Soc. Sec.,* 344 Fed. App'x. 181, 191, 2009 U.S. App.LEXIS 19206 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009)

Here, the ALJ determined that plaintiff suffered from severe impairments of obesity, depression and bipolar disorder. (Tr. 21) Because she determined that plaintiff suffered from these severe impairments, she was required to consider all of plaintiff's impairments in the remaining steps of her analysis, including in making her RFC finding. *See Simpson v. Comm'r of Soc. Sec.,* 344 Fed. App'x. at 191. Here, however, the ALJ's only discussion of plaintiff's lower back and hip impairments is found at step two of her analysis. (Tr. 22) At the end of the step two analysis, the ALJ's decision states, "[a]lthough none of these conditions was found to be severe, their collective existence was nevertheless considered during formulation of the residual functional capacity." (Tr. 23) Despite the inclusion of this boilerplate statement, there is no indication that the ALJ further considered Huminski's lower back and hip impairments in formulating his RFC.

The Commissioner does not argue that the ALJ properly considered these impairments in the remaining steps of her analysis. Defendant's brief invokes the appropriate law but then asserts, "[i]n any event, the ALJ's finding of non-severity was supported by substantial evidence." ECF Doc. 15, Page ID# 761. Even if that were true, it would not resolve the issue before the court. Huminski's burden at step two was a *de minimis* hurdle and there was evidence in the record showing that his back and hip problems were severe. But even if they had been

properly found to be non-severe impairments, the ALJ was still required to consider them at the remaining steps of the analysis. Defendant's argument side-steps this point, perhaps because the ALJ did *not* further consider these impairments after she determined they were non-severe. If she did, she did not discuss them in her decision. The court cannot find that substantial evidence supports the ALJ's RFC finding at step four based on the inclusion of a boilerplate statement at the close of the step two analysis.

The ALJ erred in finding that Huminski's lower back and hip impairments were not severe. The court cannot find this error harmless because nothing in the ALJ decision indicates that these impairments were considered in formulating Huminski's RFC. Thus, the ALJ failed to follow the proper legal standards and I recommend remand on this basis.

### C. Residual Functional Capacity

Huminski next argues that the ALJ's questions to the VE and corresponding RFC determination did not accurately reflect his abilities. He contends that the record does not support a finding that he could perform a range of medium work. The ALJ, not a physician, is assigned the responsibility of determining a claimant's RFC based on the evidence as a whole. 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.946(c). The regulations require the ALJ to evaluate several factors in determining the RFC, including all medical evidence (not limited to medical opinion testimony) and the claimant's testimony. See *Henderson v. Comm'r,* 2010 U.S. Dist. LEXIS 18644, *7 (N.D. Ohio, March 1, 2010) citing, *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); SSR 96-5p, 1996 SSR LEXIS 2, SSR 96-8p, 1996 SSR LEXIS 5. The final responsibility for deciding the RFC "is reserved to the Commissioner." 20 C.F.R. § 416.927(e)(2). Although the Commissioner must determine Huminski's residual functional

capacity, she is required to follow the regulations and to consider the medical evidence in the record.

Nothing in the ALJ's decision permits the court to conclude that the ALJ considered Huminski's lower back and hip impairments in determining his RFC. The court cannot simply assume that the ALJ complied with the regulations. In expressing the RFC, the only physical impairment the ALJ mentioned was Huminski's obesity:

> In terms of the claimant's alleged obesity, the claimant reported a body weight of 265 pounds (2E/2), which corresponds to a body mass index in excess of thirty-six (2E/2). In turn, this is consistent with a body weight of 280 pounds, recorded on March 13, 2015 (8F/33) and a body weight of 282 pounds, recorded on November 16, 2015 (9F/1). Although no direct medical evidence indicates that this impairment causes the claimant excess fatigue, or unduly restricts his ability to move about freely within the workplace, this impairment has been included as severe.
>
> Nevertheless, restriction to medium work would sufficiently accommodate this impairment.

(Tr. 25) If the ALJ had properly considered Huminski's low back and hip impairments at this point in the sequential evaluation, her finding as to the most that Huminski was capable of doing physically may well have been different.

The Commissioner cites several medical records that would have supported the ALJ's RFC determination. The problem is, the ALJ didn't discuss these records. It doesn't appear that she considered the medical records related to Huminski's low back and hip impairments at any point past step two. Had the ALJ discussed Huminski's low back and hip impairments in determining the RFC and cited portions of the record to support her determination, this would be a different case. As it is, this court is not at liberty to accept the Commissioner's *post hoc* rationalization for the ALJ's decision. "If the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding

17

removed from the picture," the court should remand the case to the agency for further consideration. *Berryhill v. Shalala*, 4 F.3d 993, 1993 WL 361792 at *7 (6th Cir. 1993) (quoting *Kurzon v. U.S. Postal Serv.,* 539 F.2d 788, 796 (1st Cir. 1976)).

Here, the ALJ erred in finding that Huminski's low back and hip impairments were non-severe and in apparently failing to consider those impairments in subsequent steps of her sequential analysis. The RFC determination may well have been different had these impairments been considered. Furthermore, because the ALJ did not mention Huminski's lower back and hip impairments in subsequent steps, she failed to build an accurate and logical bridge between the evidence and the result. *Fleischer,* 774 F.Supp.2d at 877 (*quoting Sarchet,* 78 F.3d at 307.)

## VII. Recommendation

Because the ALJ did not correctly apply the applicable legal standards and because the ALJ's reasoning did not build an accurate and logical bridge between the evidence and the results of her decision, I recommend that the final decision of the Commissioner be VACATED and that the case be REMANDED, pursuant to 42 U.S.C. § 405(g) sentence four, for further proceedings consistent with this Report and Recommendation.

Dated: December 6, 2017

Thomas M. Parker
United States Magistrate Judge

---

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981). See also *Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).**